IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

CASE NO. 5:21-CR-00341-M

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) **OPINION AND ORDER** |
| v. | ) |
| MARKEASE EDWIN MORGAN, | ) |
| Defendant. | ) |

This matter is before the court on Defendant Markease Edwin Morgan's Motion to Suppress [DE 22]. Morgan moves to suppress all evidence obtained through a February 4, 2021 search of his residence pursuant to a warrant. There is no dispute about the material facts. Instead, Morgan argues the warrant to search his residence was not supported by probable cause. In addition, he argues it was objectively unreasonable for the officers to believe the warrant was supported by probable cause. Therefore, the officers did not act in good faith.

Morgan's arguments are rejected. The officers had sufficient evidence for probable cause to obtain a warrant. For the reasons that follow, Morgan's motion to suppress is denied.

I.   **Statement of the Facts**

On January 20, 2021, Raleigh Police Officer Goddard responded to a report of a stolen black 9mm Beretta pistol. [DE 23-1, at 13–17]. The complainant, James Grant, reported that on the day in question, he grabbed his Beretta pistol, put it in his passenger glove box, and went to pick up his friend, Markease Morgan. [DE 23-1, at 13]. Grant and Morgan visited four or five fish tables at sweepstake stores. *Id.* After they finished playing, the two had a heated political argument in Grant's car. *Id.* Grant stopped at a smoke shop, picked up some smokes, and left

Morgan in the car. *Id.* Afterwards, Grant dropped Morgan off near his residence. [DE 23-1, at 13–14]. About two minutes later, Grant checked his glovebox and found his gun was missing. [DE 23-1, at 14]. Grant called Morgan and asked if he took the gun. Morgan denied it and hung up the phone. Grant called back and told Morgan he would call the police, but Morgan still denied taking the firearm. *Id.* Grant reported his stolen firearm to the police. He explained that the only time he left Morgan alone in the car was when he went inside to buy some smokes, and otherwise the car was locked. *Id.* Based on Grant's report, Officer Goddard obtained warrants to arrest Morgan for larceny and possession of a firearm by a felon.[1]

On February 4, 2021, Raleigh Police Officers Deach and Battle surveilled Morgan's residence at 4832-A Hollenden Drive in Raleigh, North Carolina, to serve him with the outstanding arrest warrants. [DE 23-1, at 11–12]. The officers watched Morgan exit his residence, enter the driver side of a black Toyota Corolla, and depart with a male passenger. [DE 23-1, at 11]. Officers Deach and Battle relayed this information to Officers Patterson and Brunker. [DE 23-1, at 7, 11]. The officers then followed Morgan to a nearby apartment complex and conducted a stop. *Id.* As they approached the vehicle, the officers smelled a strong odor of marijuana and conducted a search. *Id.* The search of the vehicle uncovered plastic bags. [DE 23-1, at 1–2, 7]. The officers then searched Morgan and found a small bag of marijuana, and $247 in small bills. [DE 23-1, at 1–2, 7]; [DE 23-2, at 5].

Approximately two hours later, Officer Patterson successfully obtained a warrant to search Morgan's residence at 4832-A Hollenden Drive. The warrant sought evidence of criminal activity,

---

[1] Morgan was convicted of involuntary manslaughter and possession of a stolen firearm in 2019.

2

specifically, possession of marijuana and possession of a stolen firearm. [DE 23-2 (Search Warrant)]. The warrant authorized the officers to seize

> Evidence of ownership or possession of the 4832-A Hollenden Dr, any and all evidence related to illegal narcotics violations of Chapter 90-95[,] including but not limited to firearms and weapons, identification used in commission of crimes and any additional evidence that can be used to prove the crime of Possession of Marijuana. Evidence of stolen property, including the stolen firearm and any other property that is deemed stolen from Raleigh Police databases or NCIC.

[DE-23, at 4]. Officer Patterson supported the warrant application with his 11 years of experience with the Raleigh Police Department, including investigating drug offenses and violations. [DE 23-2, at 3]. Officer Patterson's application identified the place to be searched as 4832-A Hollenden Drive. [DE 23-2, at 4]. The facts establishing probable cause included officers observing Morgan exit 4832-A Hollenden Drive, leave his residence in a vehicle "followed directly by officers until a traffic stop could be conducted," the strong smell of marijuana emitting from the stopped vehicle, marijuana found on Morgan, and plastic bags found in his vehicle. [DE 23-2, at 5]. The "ripped plastic bags [were] consistent with packaging for drug sales, typically marijuana," and Morgan was also carrying "large amounts of currency in smaller bills." *Id.* In addition, Morgan was already suspected of larceny of a firearm and warrants were out for his arrest. *Id.* Officer Patterson noted that the firearm had not been found at the time he requested a warrant. *Id.*

On February 4, 2021, Raleigh Police officers executed the search warrant at 4832-A Hollenden Drive. The officers searched Morgan's bedroom. Digital scales were located on a bedroom dresser and the stolen Beretta firearm was uncovered under Defendant's mattress wrapped in a green flag. [DE 23-1, at 7, 9]. "The following items were seized: 1. Beretta Firearm, 2. 2 digital Scales, 3. Tax Document, 4. Cell Phone, 5. Black plastic containing marijuana." [DE 23-2, at 6].

3

## II. Procedural History

On September 8, 2021, Morgan was charged in a two-count Indictment for possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1), 924, and for knowing possession of a stolen firearm in violation of 18 U.S.C. §§ 922(j) and 924. [DE 1]. He was arrested on September 23, 2021.

On November 2, 2021, Morgan filed the instant Motion to Suppress and Memorandum in Support. [DE 22, DE 23]. He moves for suppression and exclusion of all evidence obtained from the Raleigh Police Department's February 4, 2021 search and seizure at 4832-A Hollenden Drive. [DE 22]. He moves under the Fourth Amendment to the United States Constitution, and state law analogues that are not applicable here. *Id.*

Morgan's arraignment is set for the January 25, 2022 term of court. [DE 26].

## III. Analysis

### A. The warrant was supported by probable cause.

The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Raleigh police officers searched Morgan's house and seized the stolen firearm pursuant to a warrant. Moving to suppress this evidence, Morgan asserts the warrant lacked probable cause because the officer's warrant application "failed to establish a sufficient nexus between Morgan's alleged criminal conduct and his residence." [DE 23, at 3]. This court rejects Morgan's argument.

4

A court determining whether probable cause to conduct a search existed asks a "'practical, common-sense' question:" is there "a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Blakeney*, 949 F.3d 851, 859 (4th Cir. 2020) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). This standard is "not a high bar." *United States v. Bosyk*, 933 F.3d 319, 325 (4th Cir. 2019) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018)). The standard employs a totality-of-the-circumstances analysis asking if "the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). In reviewing a magistrate's decision to issue a warrant, the court applies "a deferential and pragmatic standard to determine whether the judge 'had a substantial basis for concluding that a search would uncover evidence of wrongdoing.'" *Bosyk*, 933 F.3d at 325 (quoting *Gates*, 462 U.S. at 236).

Probable cause exists when there is a sufficient nexus between the place to be searched and the items to be seized. That nexus "may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." *United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988). For example, courts routinely uphold warrants to search "residences and even temporary abodes on the basis of (1) evidence of the suspects' involvement in drug trafficking combined with (2) the reasonable suspicion (whether explicitly articulated by the applying officer or implicitly arrived at by the magistrate judge) that drug traffickers store drug-related evidence in their homes." *United States v. Williams*, 548 F.3d 311, 319 (4th Cir. 2008) (collecting cases).

In this case, the search warrant was supported by probable cause. First, the officers presented sufficient evidence for the magistrate to issue a warrant to search Morgan's residence

5

Case 5:21-cr-00341-M   Document 27   Filed 11/24/21   Page 5 of 12

for drug activity. Second, the officers also presented sufficient evidence for the magistrate to issue a warrant to search Morgan's residence for the stolen firearm.

### i. The warrant to search Morgan's residence for drug activity was supported by probable cause.

Based on the traffic stop, the officers had probable cause to obtain a warrant to search Morgan's residence for evidence of drug activity. The officers watched Morgan exit 4832-A Hollenden Drive until they conducted a traffic stop. [DE 23-2, at 5]. They observed that "[f]rom the point of his departure from 4832-A Hollenden Dr. to the time of his arrest, he did not stop to interact with anyone else." [DE 23-2, at 5]. As the officers approached Morgan's vehicle, they smelled marijuana. *Id.* The officers searched his vehicle and uncovered "several ripped plastic bags consistent with packaging for drug sales, typically marijuana." *Id.* They then searched Morgan and found marijuana and a large amount of small bills on his person. *Id.* This evidence that Morgan was "involve[d] in drug trafficking combined with . . . reasonable suspicion . . . that drug traffickers store drug-related evidence in their homes," plainly established a nexus between the evidence of criminal activity, Morgan's residence, and the items to be seized. *See Williams*, 548 F.3d at 319.

In numerous cases the Fourth Circuit has confirmed that it is reasonable to search the residence of an individual suspected of drug activity for evidence of drug activity. As an initial matter, "the nexus analysis starts with the general rule that 'it is reasonable . . . to assume that a person keeps his possessions where he resides.'" *United States v. Wienke*, 733 F. App'x 65, 70 (4th Cir. 2018) (quoting *Peffer v. Stephens*, 880 F.3d 256, 270 (6th Cir. 2018)). More directly, in *United States v. Williams*, an officer conducted a traffic stop of a defendant and arrested him for driving with a suspended license and as a wanted fugitive. *Williams*, 974 F.2d at 480. At the time of arrest, Williams possessed a receipt from the Statesman Motor Lodge motel and a search of his

vehicle uncovered "a concealed knife and several small plastic bags containing suspected drug residue." *Id.* at 481. The officer obtained a warrant to search William's motel room and seized cash, drugs, and paraphernalia. *Id.* William's moved to suppress the evidence, the district court granted, and the Fourth Circuit reversed. The Fourth Circuit explained that the warrant was supported by probable cause because evidence showed that "Williams was a drug dealer," he "was currently residing in the Statesman Motor Lodge," and therefore "there was a fair probability that drug paraphernalia would be found in Williams' motel room." *Id.* at 481–82. That ruling—that a nexus exists between the residence of a person known to engage in illegal drug activity and a search of that residence for evidence of drug activity—has been affirmed by the Fourth Circuit on multiple occasions. *See Williams,* 548 F.3d at 319 ("[W]e have upheld warrants to search suspects' residences and even temporary abodes on the basis of (1) evidence of the suspects' involvement in drug trafficking combined with (2) the reasonable suspicion . . . that drug traffickers store drug-related evidence in their homes."); *see also United States v. Grossman,* 400 F.3d 212, 218 (4th Cir. 2005) ("[I]t is reasonable to suspect that a drug dealer stores drugs in a home to which he owns a key."). The magistrate here had probable cause to issue the search warrant for 4832-A Hollenden Drive.

### ii. The warrant to search Morgan's residence for the stolen firearm was supported by probable cause.

So too, the magistrate had probable cause to issue the warrant to search for stolen property, including the stolen firearm. First, the police officers were following Morgan pursuant to an arrest warrant because Morgan was a credible suspect in the larceny and illegal possession of a firearm. [DE 23-1, at 7, 11]; [DE 23-2, at 5]. He was the only person in Grant's car the day that Grant's firearm went missing. Moreover, the two men had a heated argument just before Grant let Morgan out of his car and then discovered his firearm was missing. [DE 23-1, at 13–16].

7

Thus, probable cause was established by credible evidence that Morgan had stolen a firearm, which was compounded by evidence that Morgan was engaged in illegal drug activity. Again, for purposes of "normal inferences" that establish a nexus between the place to be searched and the items to be seized, "it is reasonable . . . to assume that a person keeps his possessions where he resides." *Wienke*, 733 Fed. App'x at 70 (quoting *Peffer*, 880 F.3d at 270). This inference applies to gun-related crimes. "For example, the use of a gun in the commission of a crime is sufficient to establish a nexus between the suspected criminal's gun and his residence because guns are generally kept in the home." *Wienke*, 733 Fed. App'x at 70 (internal citation and quotation marks omitted); *see also United States v. Jones*, 942 F.3d 634, 639–40 (4th Cir. 2019) (holding it reasonable to assume individuals keep their weapons in their homes). Moreover, the officers' inclusion of firearms in the application to search and seize evidence related to illegal narcotics was itself valid given the "well-known and attested-to link between drug distribution and firearms." *United States v. Perry*, 560 F.3d 246, 251 (4th Cir. 2009); *see also United States v. Ward*, 171 F.3d 188, 195 (4th Cir. 1999) ("Guns are tools of the drug trade and are commonly recognized articles of narcotics paraphernalia.").

As a result, the magistrate correctly found probable cause to issue a search warrant for 4832-A Hollenden Drive. The officers stopped Morgan leaving that address with illegal drugs but the missing firearm he was alleged to have stolen was not on his person. Therefore, sufficient evidence was presented to search his residence for both drugs and guns.

**B. Even if the warrant lacked probable cause to search for the stolen firearm, the stolen firearm was seized pursuant to the warrant requirement's plain-view exception.**

The government assumes, arguendo, that it did not have probable cause to search for the stolen firearm; but it argues the firearm was nonetheless lawfully seized pursuant to the plain-view

8

exception to the warrant requirement. [DE 24, at 5]. The court disagrees that the warrant was deficient in any respect. *See supra* § III. A. Nevertheless, the government is correct. Even if the warrant lacked probable cause to search Morgan's residence for the stolen firearm, the firearm was seized under the plain-view exception because the officers were lawfully searching the residence for drug activity when they discovered the firearm.

As a general rule, a warrantless search or seizure is per se unreasonable. *United States v. Williams*, 592 F.3d 511, 521 (4th Cir. 2010). This rule is subject to "a few specifically established and well-delineated exceptions." *Id.* (quoting *Mincey v. Arizona*, 437 U.S. 385, 390 (1978)). One exception is the "plain-view" exception. This exception "authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity." *Illinois v. Andreas*, 463 U.S. 765, 771 (1983). The plain-view exception to the warrant requirement applies if the government proves "that: (1) the officer was lawfully in a place from which the object could be viewed; (2) the officer had a 'lawful right of access' to the seized items; and (3) the incriminating character of the items was immediately apparent." *United States v. Davis*, 690 F.3d 226, 233 (4th Cir. 2012) (quoting *United States v. Jackson*, 131 F.3d 1105, 1109 (4th Cir. 1997)). "The plain-view doctrine is grounded on the proposition that once police are lawfully in a position to observe an item first-hand, its owner's privacy interest in that item is lost; the owner may retain the incidents of title and possession *but not privacy.*" *Williams*, 592 F.3d at 521 (quoting *Andreas,* 463 U.S. at 771).

The officers lawfully seized the stolen firearm under the plain-view exception. First, the officers were lawfully searching Morgan's bedroom for illegal drug activity. *See infra* § III.A.i. Second, the warrant gave the officers a "lawful right of access" to Morgan's bedroom and to search

9

under the bed for evidence of illegal drugs. *Id.*; *see also cf. United States v. Brown*, 637 Fed. App'x 90, 92 (4th Cir. 2016) (determining a search for defendant's clothing did not exceed the scope of consent when "guns were found under the mattress on which [defendant] attempted to hide."). Third, the "incriminating character" of the firearm hidden under the mattress was "immediately apparent" to the officers. The officers knew warrants were out for Morgan's arrest based on larceny of a 9mm Beretta pistol. In addition, "the officers knew [Morgan] was a convicted felon before executing the search warrant. They also knew it was a crime for a convicted felon to possess firearms. Thus, they knew any firearms in defendant's possession were being possessed illegally." *See United States v. Nesbitt*, No. 2:08-CR-1153-DCN, 2010 WL 297689, at *3 (D.S.C. Jan. 19, 2010). As a result, even if the firearm had not been expressly named as an object of the search in the warrant, when the officers found the stolen firearm, they could have lawfully seized it pursuant to the plain-view exception to the warrant requirement.

### C. The police officers acted in good faith.

Even if the warrant lacked probable cause to search for drugs or guns (it did not), the evidence obtained would not be excluded because the officers acted in good faith reliance on a facially valid warrant. When evidence is obtained through an unreasonable search or seizure, the exclusionary rule forbids "the government from using [the] illegally obtained evidence against the victim of an illegal search." *United States v. Houston*, 834 F. App'x 15, 16 (4th Cir. 2021). There is, however, a good-faith exception to the exclusionary rule. Under this exception "evidence obtained by an officer who acts in objectively reasonable reliance on a search warrant will not be suppressed, even if the warrant is later deemed invalid." *United States v. Thomas*, 908 F.3d 68, 72 (4th Cir. 2018). Officers are presumed to act in good faith when they search and seize pursuant to a warrant issued by a neutral magistrate. *Williams*, 548 F.3d at 317 ("[S]earches conducted

'pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search.'") (quoting *Leon*, 568 U.S. at 922)). Therefore, the good-faith exception applies except in four narrow circumstances: first, "when the affiant based his application on knowing or reckless falsity;" second, "when the judicial officer wholly abandoned his role as a neutral and detached decision maker and served merely as a 'rubber stamp' for the police;" third, "when the affidavit supporting the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and," fourth, "when the warrant was so facially deficient that the executing officers could not reasonably have presumed that the warrant was valid." *United States v. Wellman*, 663 F.3d 224, 228–229 (4th Cir. 2011) (citing *United States v. Doyle*, 650 F.3d 460, 467 (4th Cir. 2011)).

Morgan argues the third factor. He argues that "it was unreasonable for the executing officer to believe that probable cause existed to search the residence for evidence of illegal drug activity based solely on plastic bags found in the car and $247.00 and approximately 1 gram of marijuana found on Morgan's person during a traffic stop approximately 1.9 miles from the residence with nothing more." [DE 23, at 5]. As a result, Morgan asserts the officer's affidavit supporting probable cause was "entirely unreasonable."

Morgan's argument fails. The officers' reliance on the warrant was entirely reasonable. It is rare to find an affidavit so lacking in evidence of probable cause as to render official belief unreasonable because the magistrate has primary responsibility for making the probable-cause determination. *See Messerschmidt v. Millender*, 565 U.S. 535, 546–48 (2012). As explained in the sections above, the officers presented sufficient evidence of criminal activity connected to 4832-A Hollenden Drive. It cannot be said that the officers who followed Morgan pursuant to an

11

arrest warrant for a stolen firearm, who tailed him from his residence, performed a traffic stop, found paraphernalia and marijuana in his car and on his person, but failed to locate the stolen firearm on him, nevertheless lacked any reasonable belief that probable cause existed to search the residence that they saw Morgan exit just before the traffic stop. The officers' reliance on this evidence for probable cause was not "entirely unreasonable." Indeed, it was reasonable. *See Leon*, 468 U.S. at 923. In sum, even if the warrant had lacked probable cause, the officers search of Morgan's residence and seizure of the stolen firearm and other evidence of criminal activity would be valid under the good-faith exception to the warrant requirement.

## IV. Conclusion

For the reasons discussed herein, Morgan's Motion to Suppress [DE 22] is DENIED.

SO ORDERED this the 24th day of November, 2021.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE